OPINION OF THE COURT
 

 Wesley, J.
 

 More than 13 years ago, this Court held in
 
 Carmel v Lunney
 
 (70 NY2d 169, 173) that an individual convicted of a criminal offense must be able to assert “his innocence or a colorable claim of innocence” before he can pursue a claim against his attorney for legal malpractice arising out of the criminal proceeding. The question we address today is when does a plaintiffs cause of action for criminal legal malpractice accrue for Statute of Limitations purposes? The policy reasons underlying the unique nature of legal malpractice claims arising out of criminal proceedings dictate that the cause of action accrues for Statute of Limitations purposes when the criminal proceeding is terminated, i.e., on the date when the indictment against the plaintiff is dismissed.
 

 Plaintiff Danny Britt was indicted on July 11, 1990 for the crimes of rape in the first degree and related sex offenses. Defendant Norman Bock undertook to represent Britt on behalf of defendant Legal Aid Society, Britt’s court assigned counsel.
 

 Britt allegedly informed Bock that he wished to proceed to trial because he was innocent of the charges. In January 1991, Britt told Bock that he was dissatisfied with Bock’s representation and that Bock appeared unprepared for trial. As the trial date approached, Britt informed Bock that he did not want Bock to try his case; Britt continued to assert his innocence.
 

 On March 6, 1991, the scheduled trial date, Britt requested the trial court to relieve defendants Legal Aid Society and Bock as his counsel and to appoint another attorney in their stead; the court denied Britt’s request. Britt then pleaded guilty to attempted rape in the first degree. Shortly thereafter, Britt moved
 
 pro se
 
 to withdraw his plea on the ground that it had been coerced by Bock and Bock’s Legal Aid supervisor. New counsel was appointed on April 22, 1991 with respect to the
 
 pro se
 
 application. After months of considering Britt’s application to withdraw his guilty plea, the court ultimately denied the motion.
 

 Britt was sentenced on February 3, 1992. On appeal, the Appellate Division remanded the matter to the trial court for a hearing to determine the voluntariness of the plea
 
 (see, People v Britt,
 
 200 AD2d 401). After the hearing, the trial court
 
 *446
 
 determined that Bock had provided ineffective assistance which rendered Britt unable to consider properly the plea offered. On September 30, 1994, the trial court vacated Britt’s guilty plea and rescheduled the case for further proceedings. Britt was released from prison on December 27, 1994. On March 7, 1996, the indictment against him was dismissed.
 

 Britt commenced this action on September 27, 1997. Defendants moved to dismiss the complaint upon the ground that the action was untimely. Supreme Court denied the motion. The court determined that in legal malpractice actions based upon representation in a criminal proceeding, the cause of action does not accrue until the plaintiff no longer faces criminal charges either by vacatur or reversal. The court concluded that even assuming the earlier date of September 30, 1994, when Britt’s conviction was vacated and remanded, the action was still timely.
 

 The Appellate Division affirmed (267 AD2d 76), holding that because Britt’s conviction was vacated and remanded on September 30, 1994, the motion court properly found that the Statute of Limitations began to run on that date and, consequently that Britt’s commencement of this action was timely. We now affirm but disagree with the Appellate Division with respect to the date on which Britt’s cause of action accrued.
 

 Statutes of Limitation begin to run when a cause of action accrues
 
 (Ely-Cruikshank Co. v Bank of Montreal,
 
 81 NY2d 399, 402 [citing CPLR 203 (a)]). In legal malpractice actions arising out of civil proceedings, an action for malpractice accrues at the date of the malpractice, i.e., the date when the injury occurs
 
 (Glamm v Allen,
 
 57 NY2d 87, 93;
 
 see also, Ackerman v Price Waterhouse,
 
 84 NY2d 535, 541). A legal malpractice action arising out of a criminal proceeding, however, involves a significant distinction
 
 (see, Carmel v Lunney,
 
 70 NY2d 169, 173,
 
 supra).
 
 As we held in
 
 Carmel v Lunney,
 
 “[t]o state a cause of action for legal malpractice arising from negligent representation in a criminal proceeding, plaintiff must allege his innocence or a colorable claim of innocence of the underlying offense * * *, for so long as the determination of his guilt of that offense remains undisturbed, no cause of action will lie”
 
 (id.,
 
 at 173).
 

 This requirement is central to the determination of causation in a cause of action for legal malpractice arising from a criminal proceeding. The client must show that the attorney was the proximate cause of his or her conviction
 
 (see, Claudio v Heller,
 
 119 Misc 2d 432, 434-435). As we have noted:
 

 
 *447
 
 “To be sure, a defendant in a criminal proceeding might be able to prove malpractice by establishing that but for the negligent representation he would, for example, have invoked his 5th Amendment rights, or succeeded in suppressing certain evidence conclusive of his guilt. But, because he cannot assert his innocence, public policy prevents maintenance of a malpractice action against his attorney. This is so because criminal prosecutions involve constitutional and procedural safeguards designed to maintain the integrity of the judicial system and to protect criminal defendants from overreaching governmental actions”
 
 (Carmel v Lunney, supra,
 
 70 NY2d, at 173).
 

 We require that the criminal client bear the unique burden to plead and prove that the client’s conviction was due to the attorney’s actions alone and not due to some consequence of his guilt
 
 (Carmel v Lunney, supra,
 
 70 NY2d, at 173-174 [“These aspects of criminal proceedings make criminal malpractice cases unique, and policy considerations require different pleading and substantive rules” (citing Kaus and Mallen,
 
 The Misguiding Hand of Counsel
 
 — Reflections
 
 on “Criminal Malpractice,”
 
 21 UCLA L Rev 1191)]).
 

 In order to open the door for even a colorable claim of innocence, criminal defendants must free themselves of the conviction, for the conviction precludes those potential plaintiffs from asserting innocence in a civil suit
 
 (see, Claudio v Heller,
 
 119 Misc 2d 432, 433-434,
 
 supra
 
 [citing
 
 Vavolizza v Krieger,
 
 33 NY2d 351;
 
 Rastelli v Sutter, Moffatt, Yannelli & Zerin,
 
 87 AD2d 865]). Contrary to defendants’ contentions, Britt’s cause of action for legal malpractice against defendants could not have accrued on the date when he requested new counsel. Indeed, the cause of action could not accrue while plaintiffs conviction remained a jural fact
 
 (see, Carmel, supra,
 
 70 NY2d, at 173). Accrual occurs “when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint”
 
 (Kronos, Inc. v AVX Corp.,
 
 81 NY2d 90, 94). Thus, we agree with plaintiff that his cause of action against defendants could not possibly have accrued until he was able to assert the element of his innocence. Vacatur of the conviction and remand of the matter to the trial docket did not signal the accrual of Britt’s cause of action for Britt’s criminal liability was still in doubt. A conviction on the indictment remained possible and would serve to bar his malpractice claim anew.
 

 
 *448
 
 It is only when the criminal proceeding has been terminated without a conviction that a plaintiff can assert innocence or at the very least a colorable claim thereof. We have likewise required the final termination of underlying criminal proceedings before a criminal defendant can pursue a claim for malicious prosecution. A disposition in a criminal proceeding that allows or contemplates renewal cannot serve as a foundation for a malicious prosecution action because it cannot be determined that the prosecution was unjust or unfounded until it is terminated
 
 (Smith-Hunter v Harvey,
 
 95 NY2d 191, 197). Similarly, a criminal legal malpractice plaintiff cannot assert innocence while the criminal charges remain pending.
 

 Overlaying the need for final termination of the criminal proceeding is the judicial policy against having “ ‘two conflicting determinations as to the same transaction’ ”
 
 (Smith-Hunter v Harvey,
 
 95 NY2d 191, 197,
 
 supra).
 
 As the Supreme Court has stated, the requirement of termination of the criminal proceeding in favor of the accused in a malicious prosecution is to “ ‘avoid [ ] parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [si'c] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction’ ”
 
 (Heck v Humphrey,
 
 512 US 477, 484). The requirement of final termination of the proceeding in the plaintiff’s favor will similarly prevent parallel proceedings on the issue of guilt here.
 

 The principle, that “civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments”
 
 (id.,
 
 at 486), applies with equal force to legal malpractice claims against criminal defense attorneys. Accordingly, we hold that the date on which plaintiff Britt’s cause of action accrued against defendants was March 7, 1996 when the indictment against him was dismissed. Because Britt commenced this action against defendants on September 27, 1997, the action is timely (CPLR 214 [6]).
 

 We realize that Statutes of Limitation are “ ‘designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared’” (Bl
 
 anco v American Tel. & Tel. Co.,
 
 90 NY2d 757, 773). We also recognize the significance of the other considerations underlying the need for Statutes of Limitation including
 
 *449
 
 “ ‘promoting] repose by giving security and stability to human affairs,’ * * * judicial economy,” and “discouraging courts from reaching dubious results”
 
 (id.,
 
 at 773). These interests, of course, must be balanced against the injured person’s interest in having a reasonable opportunity to assert a claim
 
 (id.,
 
 at 774).
 

 The interests of judicial economy militate against a rule where litigious criminal defendants can occupy the time of their incarceration by pursuing civil actions against their former attorneys
 
 (see,
 
 3 Hallen and Smith, Legal Malpractice, § 25.3, at 240 [4th ed]). Although our holding may extend the time in which dissatisfied criminal clients can assert malpractice claims against their attorneys, the overriding policy concerns discussed in
 
 Carmel
 
 mandate that an action may not be brought before the criminal proceeding has been terminated.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Rosenblatt concur.
 

 Order affirmed, etc.